UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANNY MARTINEZ,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CIVIL ACTION NO.: 21 Civ. 11054 (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge:

## I.      INTRODUCTION

Plaintiff Danny Martinez ("Mr. Martinez") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g). (ECF No. 1 ¶ 1).  He seeks review of the decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"), denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Act.  (Id. ¶¶ 4–8).  Mr. Martinez contends that the decision of the Administrative Law Judge dated August 26, 2021 (the "2021 Decision") was erroneous, not supported by substantial evidence, and contrary to law, and asks the Court to (a) reverse the Commissioner's decision for the calculation and award of benefits, or (b) remand for a new hearing to reconsider the evidence.  (Id. ¶ 8).

Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  On December 1, 2022, Mr. Martinez filed his motion (ECF No. 27 ("Mr. Martinez's Motion")), and on January 6, 2023, the Commissioner cross-moved

(ECF No. 29 (the "Commissioner's Motion")).  For the reasons set forth below, Mr. Martinez's

Motion is DENIED and the Commissioner's Motion is GRANTED.

## II.   BACKGROUND

### A.  Procedural History

On June 1 and June 15, 2016, Mr. Martinez filed applications for DIB[1] and SSI benefits (the

"2016 Applications"),[2] respectively, alleging that he had been unable to work since

January 1, 2016 (the "Onset Date"), due to anxiety, depression panic attacks, insomnia, and

paranoia.  (SSA Administrative Record ("R.") 167–84 (ECF No. 12)).  On July 29, 2016, the SSA

denied the 2016 Applications, finding that he was not disabled.  (R. 102–17).  Mr. Martinez

requested a hearing before an ALJ, and on March 21, 2017, he appeared before ALJ Kimberly

Schiro ("ALJ Schiro") for an evidentiary hearing (the "First Hearing").  (R. 46–81, 116).  On March

28, 2017, vocational expert ("VE") Raymond Cestar provided responses to a set of vocational

interrogatories.  (R. 252–56).

On May 24, 2017, ALJ Schiro issued a decision finding that Mr. Martinez was not disabled

under the Act.  (R. 15–27 (the "2017 Decision")).  On November 3, 2017, the SSA Appeals Council

denied  Mr.  Martinez's  request  for  review  of  the  2017  Decision.    (R.  448–50).

On December 28, 2017, Mr. Martinez filed a complaint in this Court challenging the 2017

---

[1] To quality for DIB, one must be both disabled and insured for benefits.  42 U.S.C. § 423(a)(1)(A);
20 C.F.R. §§ 404.120, 404.315(a).  The last date a person meets the insurance requirement is the date by
which the claimant must establish a disability.  Mr. Martinez met the insurance requirements through
December 31, 2017, and thus his disability must have begun on or before that date to quality for DIB.
(R. 458).

[2] SSI, unlike DIB, has no insurance requirement, but requires a showing of financial need.  See
20 C.F.R. § 416.202.  The definition of disability is the same for both DIB and SSI, but the onset date for
SSI is the date the claimant filed an application for benefits, and the benefits are limited to that date
forward.

Decision.  (R. 445–47; see Martinez v. Comm'r of Soc. Sec., No. 17 Civ. 10253 (PAE) (HBP), ECF No. 2).  On March 18, 2019, the Honorable Paul A. Engelmayer remanded the action to the Commissioner for further administrative proceedings.  (R. 461–73).  See Martinez v. Comm'r of Soc. Sec., No. 17 Civ. 10253 (PAE) (HBP), 2019 WL 1236324, at *6 (S.D.N.Y. Mar. 18, 2019).[3] On May 31, 2019, the Appeals Council vacated the 2017 Decision and remanded for a new hearing.  (R. 540–44).[4]

On November 6, 2019, Mr. Martinez appeared before ALJ Schiro for a second evidentiary hearing (the "Second Hearing").  (ECF No. 23-1).[5]  VE Steve Wood also testified at the Second Hearing.  (Id. at 17–24).  On December 19, 2019, medical examiner ("ME") Jennifer Blitz, Psy.D., submitted responses to a set of interrogatories.  (R. 1660–77; see § II.B.2.b.iv, infra). On February 3, 2020, ALJ Schiro issued a decision finding that Mr. Martinez was not disabled under the Act.  (R. 548–56 (the "2020 Decision")).  On February 24, 2020, Mr. Martinez filed written exceptions to the 2020 Decision, and on March 5, 2021, the Appeals Council remanded for another hearing before a new ALJ.  (R. 565–66).

On July 14, 2021, Mr. Martinez appeared before ALJ Angela Banks ("ALJ Banks") for a third evidentiary hearing (the "Third Hearing").  (ECF No. 23).  VE Brian Daly also testified at the Third Hearing.  (Id. at 21–26).  On August 26, 2021, ALJ Banks issued the ALJ Decision, finding that

---

[3] All case citations omit internal citations and quotation marks unless otherwise indicated.
[4] On May 12, 2018, Mr. Martinez filed new DIB and SSI applications.  (R. 542 (the "2018 Applications")). In its May 31, 2019 remand order, the Appeals Council consolidated the 2018 Applications with the 2016 Applications, and directed the ALJ to apply the Regulations applicable at the time the 2016 Applications were filed.  (R. 542).
[5] When she filed the Record on May 9, 2022, the Commissioner failed to include the transcripts of the Second and Third Hearings.  (See ECF Nos. 12 – 12-9).  On November 18, 2022, the Commissioner separately filed these transcripts, (ECF Nos. 23; 23-1), which do not bear the same pagination found in the rest of the Record, so, accordingly, the Court references them using the ECF-assigned pagination.

Mr. Martinez was not disabled under the Act.  (R. 380–409).  On October 6, 2021, the ALJ Decision

became the final decision of the Commissioner when the Appeals Council denied review.  See 20

C.F.R. §§ 404.981, 416.1481  On December 23, 2021, Mr. Martinez filed this action challenging

the ALJ Decision.  (ECF No. 1).

### B.  Factual Background

#### 1.  Non-medical evidence

Mr. Martinez was 40 years old on the alleged Onset Date and 45 on the date of the ALJ

Decision.  (R. 82).  He has an eleventh-grade education and lives with his mother.  (R. 59;

ECF No. 23 at 18).

From 1995 through 2011, he worked in a warehouse in New Jersey as a "general helper[,]"

which involved driving a forklift and folding boxes.  (R. 90; ECF No. 23 at 7–8).  Mr. Martinez

voluntarily left the warehouse position when "the company moved to Long Island, and [he] didn't

go" because he "was having some panic attacks[.]"  (ECF No. 23 at 8; see R. 61).  In February 2016,

Mr. Martinez began working as a laborer for a construction company, but was fired later that

year because he "was getting panic attacks" and "kept going to hospital visits[.]"  (R. 59–60;

ECF No. 23 at 8–9).

In a function report dated July 1, 2016, Mr. Martinez reported that, due to his mental

impairments, he was nervous and anxious about going outside, and stayed in bed most of the

day. (R. 209, 212).  He claimed that he "sometimes hear[d] voices[.]" (R. 209).  Mr. Martinez

reported that he did not cook because he "never learned how" and was "afraid of fire." (R. 211).

He also claimed that he felt dizzy when lifting objects, standing, or walking, and became anxious

when sitting for too long.  (R. 214).

### 2.  **Medical evidence**

#### a.  **Treatment records**

Mr. Martinez has thoroughly summarized the records of his treatment for his mental impairments, (see ECF No. 28 at 6–20), and "the Commissioner adopts [Mr. Martinez]'s recitation of the facts . . . with the exception of any inferences, arguments, or conclusions asserted therein."  (ECF No. 30 at 7).  Accordingly, the Court adopts Mr. Martinez's summary as accurate and complete, and sets forth below the additional facts relevant to the Court's analysis.

#### b.  **Medical opinions**

##### i.  **Seth Sebold, Ph.D. – SSA Consultative Examiner**

On July 14, 2016, Seth Sebold, Ph.D. ("Dr. Sebold") performed a consultative psychiatric evaluation of Mr. Martinez and provided a medical source statement ("Dr. Sebold's 2016 Opinion").  (R. 295–300).  Mr. Martinez reported suffering from insomnia, persistent depression, concentration problems, fatigue, suicidal thoughts (as recently as three days prior to the exam), and panic attacks.  (R. 297).  He also reported that he occasionally heard voices, experienced hallucinations, and suffered from short-term memory loss.  (R. 297).  Dr. Sebold observed that Mr. Martinez's attention and concentration were "[i]ntact[,]" and that his recent and remote memory skills were "[m]ildly impaired."  (R. 298).  Dr. Sebold diagnosed Mr. Martinez with major depressive disorder and "[u]nspecified anxiety disorder."  (R. 299). Dr. Sebold opined that Mr. Martinez was able to:  (i) follow and understand simple directions and instructions with no limitations; (ii) perform simple tasks independently or with supervision with no limitations; (iii) maintain a regular schedule with no limitations; (iv) maintain attention and concentration with moderate limitations; (v) learn new tasks with moderate limitations; (vi) perform complex

tasks with supervision with marked limitations; (vii) make appropriate decisions with moderate limitations; (viii) relate adequately to others with moderate limitations; (ix) and appropriately deal with stress with marked limitations.  (R. 299).  Dr. Sebold also opined that Mr. Martinez's symptoms "appear[ed] to be consistent with psychiatric problems" that "may significantly interfere with [his] ability to function on a daily basis[,]" but that Mr. Martinez's overall prognosis was "[g]ood, given that psychiatric treatment continues."  (R. 299–300).

On August 10, 2019, following a second consultative psychiatric evaluation of Mr. Martinez, Dr. Sebold provided a second medical source statement ("Dr. Sebold's 2019 Opinion").  (R. 1368–73).  Mr. Martinez reported dysphoria, hopelessness, irritability, social withdrawal, fatigue, anger, frustration, suicidal thoughts (as recently as two weeks prior to the exam), palpitations, breathing difficulties, fear of dying, and trembling.  (R. 1370).  He also reported auditory hallucinations, paranoid ideations, and short-term memory loss.  (R. 1370). Dr. Sebold observed that Mr. Martinez's attention and concentration were "[i]ntact[,]" and that his recent and remote memory skills were "[m]ildly impaired."  (R. 1371).  Dr. Sebold diagnosed Mr. Martinez with "[u]nspecified depressive disorder[,]" panic disorder, and "[r]ule out persistent motor tic disorder."  (R. 1372).  Dr. Sebold opined that Mr. Martinez was able to:  (i) understand, remember or apply simple directions and instructions with no limitations; (ii) understand, remember or apply complex directions and instructions with moderate limitations; (iii) use reasoning and judgment to make work-related decisions with no limitations; (iv) interact adequately with supervisors, co-workers, and the public with moderate limitations; (v) sustain concentration and perform a task at a consistent pace with mild to moderate Limitations; (vi) sustain an ordinary routine and regular attendance at work with no limitations; (vii) regulate

emotions, control behavior, and maintain wellbeing with moderate limitations; (viii) maintain personal hygiene and appropriate attire with no limitations; and (ix) be aware of normal hazards and take  appropriate precautions with no limitations.  (R. 1372).  Dr. Sebold recommended that Mr. Martinez continue his psychiatric treatment and undertake "[v]ocational training and/or rehabilitation[,]" and opined that Mr. Martinez's prognosis was "[f]air", provided that the "recommendations are implemented."  (R. 1373).

### ii.    D. Brown, Psy.D. – State Agency Consultant

Contained in the Commissioner's July 29, 2016 Disability Determination Explanations is a consultative assessment of Mr. Martinez's mental functioning by D. Brown, Psy.D. ("Dr. Brown"). (R. 85–90, 95–100).  Based on their review of the Record as it existed at that time, Dr. Brown opined that Mr. Martinez was able to perform "unskilled work" ("Dr. Brown's Opinion")).  (R. 89, 99).  In reaching this conclusion, Dr. Brown found that Mr. Martinez's mental impairments caused moderate limitations in performing his daily activities and in maintaining social functioning, concentration, persistence, and pace.  (R. 85, 95).  Dr. Brown also opined that Mr. Martinez was moderately limited in his abilities to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal work day and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.  (R. 88–89, 98–99).  Finally,

Dr. Brown opined that Mr. Martinez had marked limitations in his ability to carry out detailed instructions.  (R. 88, 98).

### iii.    Noor Kazi, M.D. – Treating Psychiatrist

On January 14, 2017, Noor Kazi, M.D. ("Dr. Kazi"), a psychiatrist at the New York Psychotherapy and Counseling Center ("NYPCC"), where Mr. Martinez treated from June 2016 through at least July 2021 (see R. 306, 2310), provided a medical source statement ("Dr. Kazi's Opinion").  (R. 371–76).  Dr. Kazi diagnosed Mr. Martinez with generalized anxiety disorder, the symptoms of which included appetite disturbance with weight change, delusions or hallucinations, recurrent panic attacks, feelings of guilt and worthlessness, suicidal ideations or attempts, persistent irrational fears, decreased energy, and withdrawal or isolation.  (R. 372). Dr. Kazi noted that Mr. Martinez's prescribed medications included daily doses of Mirtazapine,[6] Gabapentin,[7] and Propranolol,[8] the side effects of which included drowsiness, dizziness, dry mouth, nausea, blurred vision, headache, vomiting, diarrhea, stomach cramps, and sleep problems.  (R. 373).

Dr. Kazi opined that Mr. Martinez had marked losses of his abilities to:  (i) remember locations and work-like procedures; (ii) understand, remember and carry out very short, simple instructions; (iii) maintain attention and concentration for extended periods of time, (iv) maintain

---

[6] "[M]irtazapine is an antidepressant used to treat major depressive disorder[.]"  Vazquez v. Comm'r of Soc. Sec., No. 14 Civ. 6900 (JCF), 2015 WL 4562978, at *3 n.16 (S.D.N.Y. July 21, 2015).
[7] "Gabapentin is an anticonvulsant medication that affects chemicals and nerves in the body involved in the cause of seizures and some types of pain."  Nieves v. Comm'r of Soc. Sec., No. 20 Civ. 8873 (SLC), 2022 WL 951107, at *2 n.3 (S.D.N.Y. Mar. 30, 2022).
[8] "Propranolol is a beta blocker that works by relaxing blood vessels and slowing the heart rate to improve blood flow and decrease blood pressure, and is used to prevent migraine headaches."  Maroulis v. Colvin, No. 16 Civ. 2427 (DF), 2017 WL 7245388, at *13 n.35 (S.D.N.Y. Jan. 18, 2017).

regular attendance and be punctual; (v) sustain an ordinary routine without special supervision; (vi) deal with stress of semi-skilled and skilled work; (vii) work in coordination with or in proximity to others without being unduly distracted; (viii) complete a normal workday or work week without interruptions from psychologically based symptoms; (ix) perform at a consistent pace without an unreasonable number and length of rest periods; (x) interact appropriately with the public; (xi) ask simple questions or request assistance; (xii) accept instructions and respond appropriately to criticism from supervisors; (xiii) get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes; (xiv) maintain socially appropriate behavior; (xv) adhere to basic standards of neatness and cleanliness; and (xvi) maintain social functioning.  (R. 374–75).  Dr. Kazi also opined that Mr. Martinez had no limitation in performing activities of daily living, but that his symptoms caused frequent deficiencies of concentration, persistence, or pace that resulted in failure to complete tasks in a timely manner.  (R. 375). Finally, Dr. Kazi opined that Mr. Martinez experienced repeated episodes of deterioration or decompensation, and that he would be absent from work more than three times per month. (R. 373, 275–76).

### iv.    Jennifer Blitz, Psy.D. – Medical Expert

On December 19, 2019, Jennifer Blitz, Psy.D. ("Dr. Blitz"), responded to ALJ Schiro's interrogatories regarding Mr. Martinez's mental impairments.  (R. 1671–79).  Dr. Blitz did not examine Mr. Martinez, but based her responses on her review of the record at that time. (R. 1671).  Dr. Blitz opined that Mr. Martinez had moderate limitations in interacting with others, managing himself, making judgements in complex work-related decisions, interacting with others, and responding appropriately to usual work situations.  (R. 1672, 1676–77).  Dr. Blitz also

opined that Mr. Martinez would require unscheduled breaks of twenty to thirty minutes on an infrequent basis, approximately once a week on average. (R. 1675).

### C. Administrative Proceedings

#### 1. The First Hearing, 2017 Decision, and Appeals Council order

On March 21, 2017, ALJ Schiro held the First Hearing, at which Mr. Martinez was represented by counsel. (R. 46–81). Mr. Martinez testified regarding the symptoms of, and treatment for, his mental impairments. (R. 60–81). Mr. Martinez claimed that he suffered panic attacks that came "out of nowhere" and could happen anytime. (R. 61). During a panic attack, which could last up to 15 minutes, Mr. Martinez experienced a rapid pulse, skipped heartbeats, and trouble breathing. (R. 61–62). Mr. Martinez also testified that he felt depressed, aggravated, and suicidal and could not be around people, and that his depression was worsening. (R. 61–63). His medications made him drowsy and nauseous. (R. 63–64).

As noted above, ALJ Schiro issued the 2017 Decision finding Mr. Martinez not disabled, which the Appeals Council declined to review. (See § II.A, supra). Following proceedings in this Court, in which Judge Engelmayer noted that the record before ALJ Schiro did not include NYPCC's treatment records from June 2016 forward, and that ALJ Schiro "was obligated to take some further action to develop this aspect of the record" before rendering her decision, the action was remanded, and the Appeals Council vacated the 2017 Decision and directed a new hearing. Martinez, 2019 WL 1236324, at *2, *5–6. (See R. 540–44).

#### 2. The Second Hearing, 2020 Decision, and Appeals Council Order

On November 6, 2019, ALJ Schiro held the Second Hearing, at which Mr. Martinez was again represented by counsel. (ECF No. 23-1). Mr. Martinez again testified regarding the

symptoms of, and treatment for, his mental impairments.  (Id. at 8–17).  He testified to having anxiety attacks with a rapid heartbeat and dizziness, and that his panic attacks could last a half hour and could come anytime.  (Id. at 8, 11–12).  He claimed to have suicidal thoughts on a regular basis.  (Id. at 12).  He testified that he used to help his father coach his son's baseball team by serving as a first-base coach, but that he stopped doing so two and a half years before the Second Hearing "because [his] anxiety got so bad."  (Id. at 15–16).  VE Daly also testified at the Second Hearing.  (Id. at 17–24).

ALJ Schiro issued the 2020 Decision again finding Mr. Martinez not disabled, which SSA Appeals Council vacated and remanded for another hearing before a new ALJ.  (R. 565–66).  The Appeals Council found that ALJ Schiro's decision was "unclear regarding the nature and severity of [Mr. Martinez]'s impairments[,]" specifically as to his record of headaches, insomnia, and obesity.  (R. 565).  The Appeals Council also found that substantial evidence did not support ALJ Schiro's determination that jobs existed in significant numbers in the national economy that Mr. Martinez could perform.  (R. 565).  Specifically, the Appeals Council noted that "[t]he hypothetical question posed to the [VE] did not include the limitation that [Mr. Martinez] will need one unscheduled break of 20[–]30 minutes in duration approximately once a week."  (R. 565).  The Appeals Council directed the ALJ give further consideration to:  (i)  the severity and effects of Mr. Martinez's physical impairments, (ii) Mr. Martinez's maximum residual functional capacity ("RFC") and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations, and (iii) supplemental evidence from a VE to clarify the effect of Mr. Martinez's apparent need for an unscheduled break of 20–30 minutes in duration approximately once a week.  (R. 566).

### 3.  **The Third Hearing**

On July 14, 2021, ALJ Banks held the Third Hearing, at which Mr. Martinez was represented by counsel.  (ECF No. 23).  Mr. Martinez again testified regarding the symptoms of, and treatment for, his mental impairments.  (Id. at 9–21).  He described headaches and insomnia that were not so severe as to prevent him from working.  (Id. at 9–10).  With respect to his mental impairments, Mr. Martinez testified that his depression and suicidal thoughts were "getting worse," and that he was attending therapy sessions with Melissa Wallace, LCSW ("Ms. Wallace") once a week.  (Id. at 12).  He testified that the did not want to be around people because of his depression.  (Id. at 13).  Mr. Martinez stated that he "just stay[s] home" on most days, but that he drives his father to urgent appointments approximately once a week.  (R. 18–19).

VE Daly also testified at the Third Hearing.  (ECF No. 23 at 21–26).  VE Daly classified Mr. Martinez's past work as  a:  (i) forklift operator, Dictionary of Occupational Titles ("DOT") code 921.683-050; (ii) box or a hand folder, DOT code 794.687-022; and (iii) construction worker, DOT code 869.687-026.  (Id. at 22).  ALJ Banks then asked VE Daly to assume an individual with the same age, education and past work as Mr. Martinez with no exertional limitations and the following non-exertional limitations:

> can perform simple, routine and repetitive tasks[;] . . . can perform work in a low stress job which is defined as occasional decision making, occasional judgment required and occasional changes in the work setting.
>
> Can perform work that is goal oriented but no production rate pace work. And . . . can tolerate occasional contact with co-workers, supervisors and the public.

(Id. at 22).  VE Daly testified that an individual with such limitations could not perform Mr. Martinez's past work, but could perform the work of:  (i) an order filler, DOT code 922.687-

058, of which approximately 10,000 jobs existed in the national economy; (ii) cleaner, DOT code 381.687-018, of which approximately 17,000 jobs existed in the national economy; (iii) automobile detailer, DOT code 915.687-034, of which approximately 39,800 jobs existed in the national economy; (iv) routing clerk, DOT code 222.687-022, of which approximately 105,000 jobs existed in the national economy; (v) maid, DOT code 323.687-014, of which approximately 220,000 jobs existed in the national economy; and (vi) power screwdriver operator, DOT code 699.685-026, of which approximately 261,000 jobs existed in the national economy.  (Id. at 23–24).

ALJ Banks then asked VE Daly to assume the same hypothetical individual with the additional limitation of needing to be off task more than 20 percent of the time in an eight-hour workday.  (ECF No. 23 at 24).  VE Daly testified that such limitations "would preclude any competitive employment in the national economy on a full[-]time basis."  (Id.)  VE Daly also confirmed that an individual who was absent from work twice a month would be "precluded from work."  (Id. at 25).

### 4.  The ALJ Decision

On August 26, 2021, ALJ Banks issued her Decision denying Mr. Martinez's applications for SSI and DIB benefits.  (R. 380–409).  "After careful consideration of all the evidence," ALJ Banks found that Mr. Martinez "has not been under a disability within the meaning of the Social Security Act from January 1, 2016, through the date of" the ALJ Decision.  (R. 381).

ALJ Banks followed the five-step disability determination process.  As a preliminary matter, the ALJ found that Mr. Martinez met the insured status requirements for his DIB

application through December 31, 2017.  (R. 383).  At step one, ALJ Banks found that Mr. Martinez

had not engaged in substantial gainful activity since his alleged Onset Date.  (R. 383).

At step two, the ALJ found that Mr. Martinez had three severe impairments:  generalized

anxiety disorder, major depressive disorder, and panic disorder.  (R. 383).  ALJ Banks also found

that Mr. Martinez had three non-severe impairments:  headaches, insomnia, and obesity.

(R. 383).  With respect to the non-severe impairments, the ALJ noted Mr. Martinez's testimony

that "he has no physical conditions that prevent him from working."  (R. 383; see ECF No. 23 at

9–10).  The ALJ noted that she "considered all of [Mr. Martinez]'s medically determinable

impairments, including those that are not severe, when assessing" his RFC.  (R. 384).

At step three, the ALJ found that Mr. Martinez did not have an impairment or a

combination of impairments that met or medically equaled the severity of one of the listed

impairments in the Act.  (R. 384–85).  (The impairments listed in 20 CFR Appendix 1, Subpart P,

Part 404 are known as the "Listings").  In reaching that conclusion, the ALJ considered Listings

12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive

disorders).  (R. 384).  In particular, the ALJ determined that the "paragraph B" and "paragraph C"

criteria for Listings 12.04 and 12.06 were not met because Mr. Martinez did not have at least two

"marked" limitations or one "extreme" limitation in the four broad areas of functioning and did

not present with a serious and persistent disorder that was medially documented over a period

of at least two years.  (R. 384–85).[9]  Instead, the ALJ found that Mr. Martinez had only moderate

---

[9] Listing 12.00 covers "Mental Disorders."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00.  "Paragraph B
of each [Section 12] listing (except 112.05) provides the functional criteria [the Commissioner]
assess[es] . . . to evaluate how [a claimant's] mental disorder limits [his or her] functioning."
Id. § 12.00(A)(2)(b).  Paragraph C of listings 12.02, 12.03, 12.04, 12.06, and 12.15 provides the criteria the
Commissioner "use[s] to evaluate 'serious and persistent mental disorders.'"  Id. § 12.00(A)(2)(b).

limitations in his abilities to:  (i) understand, remember, or apply information; (ii) interact with others; and (iii) concentrate, persist, and maintain pace, and a mild limitation in his ability to adapt or manage himself.  (R. 384–85).   The ALJ based these findings on, inter alia, her observations that:  (i) "examining sources have found [Mr. Martinez]'s recall/memory to have been normal when he presented for treatment" (R. 384 (citing R. 321, 1122–24)); (ii) Mr. Martinez "was noted to have been appropriate for both telemental health on and off site services due in part to his competence with technology" (R. 384 (citing R. 2231–2310)); (iii) Mr. Martinez "generally was engaged and responded well and was receptive to intervention" (R. 385 (citing R. 2065, 2074, 2126, 2149, 2158, 2172, 2181, 2195, 2198, 2202, 2215)); (iv) Mr. Martinez "was generally noted to have been . . . alert, attentive, oriented, and had concentration that was fair when he presented for evaluations" (R. 385 (citing R. 273, 322–27, 966, 1952)), and (v) Mr. Martinez's reported activities.  (R. 385).

Next, the ALJ assessed Mr. Martinez's [RFC] as being able:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations:  [he] can perform simple, routine and repetitive tasks. He can perform work in a low stress job defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting. [He] can perform work that is goal oriented, but no production pace rate work. He can tolerate occasional contact [with] co-workers, supervisors, and the public.

(R. 385–86).

In making the RFC determination, ALJ Banks considered all of Mr. Martinez's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical" and other evidence, as well as the medical opinion evidence and prior administrative medical findings.  (R. 386).   The ALJ concluded that Mr. Martinez's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his]

statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" because "there [were] significant inconsistencies between [his] subjective allegations in disability reports and the medical evidence of record."  (R. 387).  The ALJ noted, for example, that contrary to his subjective allegations, Mr. Martinez "testified that he drives in emergency situations and takes his father to appointments about once per week[,] . . . can microwave meals and make sandwiches[,] . . . was well groomed when he presented for evaluations[,] . . . [and] served as a coach for a baseball team."  (R. 388 (citing R. 193–95, 334, 364)).  ALJ Banks acknowledged that "the medical evidence of record confirmed a history of mental impairments, which has necessitated the use of psychotropic medications, frequent and regular visits with a psychiatrist and therapist, and also visits to the emergency department."  (R. 388).  She noted, however, that Mr. Martinez "ha[d] not generally received the type of psychiatric treatment one would expect for a totally disabled individual[,] . . . ha[d] acknowledged improvement in his symptoms with the use of psychotropic medications[,] . . . [and] ha[d] been noted to have been 'mentally and physically stable at this time'" at recent psychiatric assessments.  (R. 388 (citing R. 1025–1108, 2246, 2321)).

ALJ Banks discussed her consideration of the medical opinion evidence.  (R. 392–406).  The ALJ granted "partial weight" to Dr. Sebold's 2016 Opinion.  (R. 392 (citing R. 299)).  The ALJ found Dr. Sebold's opinions that Mr. Martinez had no limitations in performing simple tasks and moderate limitations in maintaining attention and concentration, learning new tasks, interacting with others, and making appropriate decisions, were generally supported by the clinical findings in the record and Mr. Martinez's reported activities.  (R. 392).  The ALJ found, however, that

Dr. Sebold's opinion of marked limitations in dealing appropriately with stress was not consistent with the Record.  (R. 392).  Specifically, ALJ Banks noted that "a review of treatment records dated after Dr. Sebol[d]'s [2016 Opinion] . . . reveal[ed] that [Mr. Martinez's] treatment ha[d] been generally successful in improving [his] symptoms" and that he "admitted his psychiatric symptoms were adequately controlled by his use of medications."  (R. 392 (citing R. 1040–1106)).

The ALJ assigned "great weight" to Dr. Brown's Opinion that Mr. Martinez's "impairments caused moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation[,]" such that he was able to perform unskilled work.  (R. 406 (citing R. 82–101, 301)).  ALJ Banks found that Dr. Brown's Opinion was "consistent with a review of the medical evidence of record and in particular the results of mental status examinations of [Mr. Martinez], which revealed that though [he] grappled with symptoms of anxiety, depressive disorder, and had panic attacks, he was generally alert, oriented, and engaged when he presented for treatment."  (R. 406).  The ALJ also noted that "Dr. Brown's [Opinion] [was] also consistent with [Mr. Martinez]'s admissions in function reports, to examining sources, and at the hearing, which revealed that he was able to partake in some activities of daily living despite his impairments."  (R. 406).

ALJ Banks granted "little weight" to Dr. Kazi's opinion of marked loss in almost all areas of mental functioning and that Mr. Martinez would be absent more than three times per month due to his impairments, finding that it was "inconsistent with limited supported clinical findings[.]"  (R. 405).  The ALJ "recognize[d] that a review of the record revealed that [Mr. Martinez] presented for frequent and regular psychiatric treatment."  (R. 405).  She noted,

however, that Mr. Martinez "admitted at the hearing and also to examining sources that he [was] able to partake in several activities of daily living[,]" including serving as a baseball coach, driving in emergency situations, taking his father to appointments about once per week, and microwaving meals and making sandwiches.  (R. 405).  The ALJ also noted that "examining sources found that [Mr. Martinez] was well groomed when he presented for evaluations." (R. 405 (citing R. 193–95, 334, 364)).  Finally, ALJ Banks noted that Mr. Martinez's "medications have been relatively effective in adequately controlling [his] symptoms[,]" and that "in progress notes dated May 7, 2021, Ms. Wallace noted that [Mr. Martinez] was 'mentally and physically stable at this time[.]'"  (R. 405 (citing R. 1040–1106, 2246, 2321).

ALJ Banks gave "significant weight" to Dr. Sebold's 2019 Opinion that Mr. Martinez demonstrated no limitations in performing simple tasks, making decisions, and sustaining a routine, and no more than moderate limitations in sustaining concentration, interacting with others, and regulating emotions.  (R. 402 (citing R. 1372)).  The ALJ noted that Dr. Sebold's 2019 Opinion was supported by his detailed mental status examination findings.  (R. 402).

The ALJ next gave "partial weight" to Dr. Blitz's December 2019 opinion that Mr. Martinez was able to perform and sustain concentration for simple and routine tasks.  (R. 405).  She noted that Dr. Blitz's opinion was consistent with Dr. Sebold's findings and opinions.  (R. 405–06).  The ALJ found, however, that "Dr. Blitz's assessment that [Mr. Martinez] would require unscheduled breaks of twenty to thirty minutes on an infrequent basis, approximately once per week on average[,] [was] not supported by a review of the medical evidence of record[.]"  (R. 406). Specifically the ALJ noted that, while Mr. Martinez's "anxiety symptoms did interfere with his ability to concentrate at times and he was noted to have had panic attacks[,]" he "was attentive,

alert, and oriented when he presented for evaluations and recent medical records have indicated that [his] symptoms are treated adequately with medications and that he is stable." (R. 406 (citing R. 1025–1108, 1196–1367, 2231–2310, 2311–25)).

At step four, ALJ Banks found that Martinez was unable to perform his past relevant work. (R. 407).  At step five, relying on VE Daly's testimony, the ALJ found that there were jobs in the national economy that Mr. Martinez could perform, such as a cleaner, automobile detailer, routing clerk, and maid.  (R. 408).  Accordingly, ALJ Banks determined that Mr. Martinez was not disabled from the Onset Date through the date of the ALJ Decision.  (R. 408).

## III.   DISCUSSION

### A.  Applicable Legal Standards

#### 1.  Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law.  See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).  A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error.  See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  Judicial review, therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29,

2008).  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  Tejada, 167 F.3d at 773.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).  The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).  The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel.  See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009).  To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources.  20 C.F.R. §§ 404.1512(b), 416.912(b).  Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's

[RFC]." <u>Casino-Ortiz v. Astrue</u>, No. 06 Civ. 155 (DAB) (JCF), 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007), <u>adopted by</u>, 2008 WL 461375 (S.D.N.Y. Feb. 20, 2008).  When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others.  <u>See</u> 20 C.F.R. §§ 404.1520(b), 416.920(b).

The Act authorizes a court, when reviewing decisions of the SSA, to order further proceedings:  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); <u>see Butts v. Barnhart</u>, 388 F.3d 377, 382 (2d Cir. 2004).  If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings.  <u>Rosa v. Callahan</u>, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  <u>See Pratts</u>, 94 F.3d at 39.  If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be appropriate.  <u>See</u>, <u>e.g.</u>, <u>Butts</u>, 388 F.3d at 386 (discussing <u>Curry v. Apfel</u>, 209 F.3d 117, 124 (2d Cir. 2000)).

## 2.  **Standards for benefit eligibility**

For purposes of SSI and DIB benefits, one is "disabled" within the meaning of the Act, and thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not

less than twelve months." 42 U.S.C. § 1382c(3)(A). The Act also requires that the impairment be

"of such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(3)(B). In reviewing a

claim of disability, the Commissioner must consider: "(1) objective medical facts; (2) diagnos[e]s

or medical opinions based on those facts; (3) subjective evidence of pain and disability testified

to by claimant and other witnesses; and (4) the claimant's background, age, and experience."

Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential

five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v) and 20 C.F.R. § 416.920(a)(4)(i)–(v).

The Second Circuit has described the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in
> substantial gainful activity. If he is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities. If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical evidence, the
> claimant has an impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the Secretary will consider him disabled without
> considering vocational factors such as age, education, and work experience; the
> Secretary presumes that a claimant who is afflicted with a "listed" impairment is
> unable to perform substantial gainful activity. Assuming the claimant does not
> have a listed impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the [RFC] to perform his past work. Finally, if the
> claimant is unable to perform his past work, the Secretary then determines
> whether there is other work which the Claimant could perform.

Bush v. Shalala, 94 F.3d 40, 44–45 (2d Cir. 1996) (quoting Rivera v. Schweiker, 717 F.2d 719, 722

(2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  See, e.g., Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid."  Zorilla v. Chater, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

### 3.  **Treating Physician Rule**[10]

The regulations require the ALJ to give "controlling weight" to "the opinion of a claimant's treating physician as to the nature and severity of the impairment . . . so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Burgess, 537 F.3d at 128; accord Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Correale-Englehart v. Astrue, 687 F. Supp. 2d 396, 426 (S.D.N.Y. 2010).  "This preference is generally justified because treating sources are likely to be 'the medical professionals most able to provide a detailed, longitudinal picture' of a plaintiff's medical impairments and offer a unique perspective that the medical tests

---

[10] The Court notes that "[i]n March 2017, the Social Security Administration published regulations that effectively abolished the Treating Physician Rule for claims filed on or after March 27, 2017."  Dorta v. Saul, No. 19 Civ. 2215 (JGK) (RWL), 2020 WL 6269833, at *3 n.8 (S.D.N.Y. Oct. 26, 2020).  Under the new regulations the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Following the Appeals Council's direction to consolidate the 2016 and 2018 Applications and apply the Treating Physician Rule, (R. 542), the ALJ correctly did so, as does the Court.

and SSA consultants are unable to obtain or communicate." Correale-Engelhart, 687 F. Supp. 2d at 426 (quoting 20 C.F.R. § 416.927([c])(2)); see 20 C.F.R. § 404.1527.

If the ALJ determines that a treating physician's opinion is not controlling, she is nevertheless required to consider the following factors in determining the weight to be given to that opinion:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence provided to support the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion.   See 20 C.F.R. §§ 404.1527(c); 416.927(c).  The ALJ must give "good reasons" for not crediting the plaintiff's treating physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (explaining that Appeals Council had "an obligation to explain" the weight it gave to the opinions of the non-treating physicians).  After considering these factors, the ALJ must fully set forth his reasons for the weight assigned to the treating physician's opinion.  See Burgess, 537 F.3d at 129.

While the ultimate issue of disability is reserved to the Commissioner, the regulations make clear that opinions from one-time examining sources that conflict with treating source opinions are generally given less weight.   See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Selian v. Astrue, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination."); Cabreja v. Colvin, No. 14 Civ. 4658 (VSB), 2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015) (explaining that opinions of one-time consultants should not overrule those provided by the treating medical sources unless there are

"serious errors" in treating sources' opinions).   Failing to apply proper weight to a treating physician's opinion is reversible error.  See Greek v. Colvin, 802 F.3d 370, 376 (2d Cir. 2015).

### 4.  Assessing a claimant's subjective allegations

In considering a claimant's symptoms that allegedly limit his ability to work, the ALJ must first determine whether there is an underlying "medically determinable" physical or mental impairment(s) —i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques — that could reasonably be expected to produce the claimant's pain or other symptoms.  See 20 C.F.R. §§ 404.1529(c), 416.929(c).  If such an impairment is found, the ALJ must next evaluate the "intensity, persistence, and limiting effects of [the claimant's] symptoms" to determine the extent to which they limit the claimant's functional limitations.   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   To the extent that the claimant's expressed symptoms are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility.   See Meadors v. Astrue, 370 F. App'x 179, 183–84 (2d Cir. 2010); Taylor v. Barnhart, 83 F. App'x 347, 350–51 (2d Cir. 2003).

Courts have recognized that "the second stage of [the] analysis may itself involve two parts." Sanchez v. Astrue, No. 07 Civ. 931 (DAB), 2010 WL 101501, at *14 (S.D.N.Y. Jan. 12, 2010). "First, the ALJ must decide whether objective evidence, on its own, substantiates the extent of the alleged symptoms (as opposed to the question in the first step of whether objective evidence establishes a condition that could 'reasonably be expected' to produce such symptoms)."   Id. "Second, if it does not, the ALJ must gauge a claimant's credibility regarding the alleged symptoms by reference to the seven factors listed [in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)]."

Id. (citing Gittens v. Astrue, No. 07 Civ. 1397 (GAY), 2008 WL 2787723, at *5 (S.D.N.Y. June 23, 2008)).  If the ALJ does not follow these steps, remand is appropriate.  See id. at *15.

When a claimant reports symptoms that are more severe than medical evidence alone would suggest, SSA regulations require the reviewing ALJ to consider specific factors in determining the credibility of the claimant's symptoms and their limiting effects.  SSR 96-7p, 1996 WL 374186, at *2 (superseded by SSR 16-3p for cases filed after March 27, 2017).  These seven factors include:  (1) an individual's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) factors that precipitate and aggravate those symptoms; (4) the type, dosage, effectiveness, and side effects of medication that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual receives or has received for pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See Bush, 94 F.3d at 46 n.4.

## B.  Evaluation of the ALJ Decision

Mr. Martinez raises four challenges to the ALJ Decision, arguing that ALJ Banks failed to: (i) apply the Treating Physician Rule; (ii) properly consider Mr. Martinez's subjective symptoms, (iii) consider the impact of Mr. Martinez's non-severe impairments and the side effects of his medications in formulating the RFC, and (iv) consider Mr. Martinez's time off-task and absenteeism.  (ECF No. 28 at 25–34).  The Court addresses each argument in turn.

1.  **Weight of the Medical Opinion Evidence**

a.  **Mr. Martinez's Arguments**

Mr. Martinez argues that the ALJ failed to apply the Treating Physician Rule in several respects.  First, he argues that "the ALJ was mandated to give . . . controlling, or at least great weight[,]" to Dr. Kazi's Opinion regarding Mr. Martinez's "many marked limitations in work-related abilities" and that Mr. Martinez would be absent from work more than three times a month.  (ECF No. 28 at 26 (citing R. 373, 375–76)).  To support this argument, Mr. Martinez notes that "Dr. Kazi is a specialist in psychiatry and treated Mr. Martinez regularly over many years[,]" and claims that "[h]is opinions were consistent with his treatment notes, as well as with the reports from Mr. Martinez's therapist" at NYPCC,  Ms. Wallace.  (Id.)

Second, Mr. Martinez argues that ALJ Banks "cherry-picked through the remaining medical opinions[.]" (ECF No. 28 at 26).  Specifically, Mr. Martinez faults the ALJ for rejecting the portion of Dr. Sebold's 2016 Opinion finding that "Mr. Martinez had marked limitations in dealing with stress, along with other moderate limitations[,]" based on subsequent improvement of Mr. Martinez's impairments following treatment.  (Id. at 26–27).  Mr. Martinez notes that his treating physicians "repeatedly found it necessary to increase and adjust his medications in an effort to control [his] symptoms, and yet continued to note no significant change in his condition[.]"  (Id. at 27). Similarly, Mr. Martinez challenges the ALJ's weighing of Dr. Sebold's 2019 Opinion, arguing that argues that "[i]t was error . . . for the ALJ to give significant weight to the opinion of Dr. Sebold — who examined Mr. Martinez only twice, three years apart, and did not review the treatment records — over the well-supported opinion of his long-time treating psychiatrist."  (Id. at 28).

Finally, Mr. Martinez argues that the ALJ erred in rejecting Dr. Blitz's Opinion that he would require unscheduled breaks of 20 to 30 minutes, approximately once a week. (ECF No. 28 at 28).  He argues that "[t]his opinion reflected the well-documented fact that Mr. Martinez had frequent panic attacks[,]" and that "the ALJ rejected it with the demonstrably false rationale that Mr. Martinez was adequately treated with medication and that he was stable."  (Id. (citing R. 405)).

### b.  The Commissioner's Arguments

The Commissioner argues that the ALJ properly weighed the medical opinion evidence under the Treating Physician Rule.  (ECF No. 30 at 16–24).  With respect to Dr. Kazi, the Commissioner responds that "there is no provision in the regulations that requires an ALJ to automatically defer to a medical opinion by virtue of the treatment relationship between the opinion's source and the claimant[,]" and that, under the Treating Physician Rule, "a treating source's opinion on the issues of the nature and severity of an individual's impairment is entitled to controlling weight only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." (Id. at 17 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2))).  The Commissioner argues that, here, the ALJ "correctly found that Dr. Kazi's opinion of marked loss in almost all areas of functioning was inconsistent with the overall record[,]" including Mr. Martinez's mental status finding and his reported activities, as well as the opinions of by Drs. Sebold, Blitz, and Brown. (Id. at 18 (citing R. 405)).

In response to Mr. Martinez's argument that ALJ Banks cherry-picked evidence when rejecting Dr. Sebold's 2016 Opinion that Plaintiff had a marked limitation dealing with stress, the

Commissioner argues that "an ALJ may reject portions of a medical opinion that are not supported by and even contrary to the objective evidence of record while accepting other portions that are supported by substantial evidence."  (ECF No. 30 at 21 (citing Veino, 312 F.3d at 588)).  The Commissioner argues that, here, the ALJ adequately explained that the aspect of Dr. Sebold's Opinion she rejected was not consistent with other evidence, including Mr. Martinez's reports that his symptoms were controlled by mediation, his reported activities, and Dr. Sebold's subsequent 2019 Opinion.  (Id. at 21–22).

Finally, the Commissioner argues that the ALJ gave good reasons for finding that Dr. Blitz's opinion that Mr. Martinez required an unscheduled break of 20 to 30 minutes approximately once per week opinion was inconsistent with other evidence.  (ECF No. 30 at 23).  Specifically, the Commissioner notes that "the ALJ explained that although [Mr. Martinez] complained that his anxiety interfered with his concentration, [he] demonstrated the ability to maintain attention and concentration at therapy and psychiatric appointments."  (Id. (citing R. 406)).

c.  **Analysis**

The Court finds that ALJ Banks properly applied the Treating Physician Rule in weighing the opinion evidence, and that substantial evidence supports the ALJ's determinations.  With respect to Dr. Kazi, the ALJ gave valid, supported reasons for determining that Dr. Kazi's Opinion of marked losses in nearly all areas of mental functioning was inconsistent with substantial Record evidence.  (R. 405).  ALJ Banks acknowledged that Mr. Martinez "presented for frequent and regular psychiatric treatment[,]" but noted that he also "admitted at the hearing and also to examining sources that he [was] able to partake in several activities of daily living" during the relevant period,  including  assisting his father in coaching baseball and driving his father to

appointments about once per week.  (R. 405).  The ALJ also noted that "examining sources found

that [Mr. Martinez] was well groomed when he presented for evaluations[,]" that  his "medical

records reveal that [his] medications have been relatively effective in adequately controlling [his]

symptoms[,]" and that "in progress notes dated May 7, 2021, Ms. Wallace noted that

[Mr. Martinez] was 'mentally and physically stable at this time.'"  (R. 385, 405 (citing R. 193–95,

334, 364, 1040–1106, 2246, 2321)).  The Court notes that Dr. Kazi rendered his Opinion in January

2017, about six months after he began treating Mr. Martinez.  (R. 306; see R. 371–76).  As the

Commissioner correctly notes, during subsequent evaluations, Mr. Martinez "often reported to

Dr. Kazi that his symptoms were adequately managed with medication."  (ECF No. 30 at 25 (citing

R.  1048,  1053,  1058,  1065,  1074,  1080,  1086,  1090,  1096,  1289,  1335,  1357).   See

Moore v. Comm'r of Soc. Sec., No. 19 Civ. 1850 (JS), 2020 WL 5077347, at *3 (E.D.N.Y. Aug. 27,

2020) (finding that "the ALJ did not err in according less weight to [the treating psychiatrist]'s

opinions, because the ALJ explained that they were not supported by his own treatment notes

reflecting mostly normal examinations and effective management of [anxiety and depression]

symptoms  with  medication");  Thomas v. Comm'r of Soc. Sec., No. 19 Civ. 1177 (GWG),

2020 WL 4757059, at *10 (S.D.N.Y. Aug. 18, 2020) (upholding ALJ's decision that a treating

psychiatrist's "own treatment record as not supporting his opinion that [the plaintiff] would be

absent from work more than three times per month, had marked limitations in several abilities

related to understanding and carrying out instructions, and had marked limitations in abilities

related to responding appropriately to supervision"); Brush v. Berryhill, 294 F. Supp. 3d 241, 266

(S.D.N.Y. 2018) (affirming ALJ decision to reject treating physician's opinion that the plaintiff

would be absent from work at least three times a month because of depression and anxiety

where "other evidence in the record contradicted that opinion" including findings that the plaintiff "could maintain attention and concentration[,] . . . was cooperative, and had intact concentration and attention").

Similarly, Mr. Martinez's argument that the ALJ cherry-picked from the opinions of Drs. Sebold and Blitz is unpersuasive.  As the Commissioner correctly notes, ALJ Banks explained that both Dr. Sebold's 2016 Opinion that Mr. Martinez had marked limitations in dealing appropriately with stress and Dr. Blitz's Opinion that he would require unscheduled breaks of 20 to 30 minutes, approximately once a week on average, "w[ere] not consistent with [his] regular reports that his psychiatric symptoms were adequately controlled with medication."  (ECF No. 30 at 21–23 (citing R. 392, 406); see R. 1048, 1053, 1058, 1065, 1074, 1080, 1086, 1090, 1096, 1289, 1335, 1357).   The Commissioner also correctly notes that Dr. Sebold conducted his initial examination in July 2016, before Mr. Martinez started receiving regular psychiatric treatment and psychotherapy. (ECF No. 30 at 22 (citing R. 1015–18, 1026–35)).  On further examination in 2019, Dr. Sebold opined that Mr. Martinez had only moderate limitations in regulating emotions, controlling behavior, and maintaining well-being.  (R. 1372).  See Vecchio v. Comm'r of Soc. Sec., No. 20 Civ. 8105 (MKV) (SLC), 2021 WL 8013772, at *15 (S.D.N.Y. Dec. 1, 2021) ("That the ALJ deemed only a portion of [the consultative examiner's] medical opinion to be persuasive . . . was not an act of impermissible cherry-picking . . . because the ALJ explained that a portion of her opinion was 'unpersuasive because it is inconsistent with the totality of the medical evidence of

record, including the unremarkable mental status examinations.'"), <u>adopted by</u>, 2022 WL 873175 (S.D.N.Y. Mar. 24, 2022)).

Mr. Martinez relies on two notes from Ms. Wallace in 2021 indicating that he was "at high risk of suicide or self-harm." (ECF No. 28 at 27 (citing R. 2241, 2283)). As the Commissioner notes, however, Mr. Martinez "overlooks that both Dr. Kazi and [Ms. Wallace] repeatedly noted that [Mr. Martinez] did not appear to be a danger to himself." (ECF No. 30 at 23 (citing R. 1035, 1036, 1038, 1040, 1041, 1080, 1083, 1086, 1090, 1095, 1098, 1100, 1290, 1293)). Thus, even though there may be <u>some</u> evidence in the record consistent with Dr. Kazi's opinions, the ALJ's decision to accord little weight to those opinions is nevertheless substantially supported by the Record, because "genuine conflicts in the medical evidence are for the Commissioner to resolve." <u>Monroe v. Comm'r of Soc. Sec.</u>, 676 F. App'x 5, 7 (2d Cir. 2017) (affirming ALJ's decision not to give controlling weight to the opinion of plaintiff's treating physician that claimant would be off-task 30–50% of the time, but described claimant as stable "most of [the] time"). It is not for this Court to "reweigh th[e] evidence or substitute its judgment for that of the ALJ where[,]" as here, "the evidence is susceptible of more than [one] interpretation." <u>Rivera v. Comm'r of Soc. Sec.</u>, 368 F. Supp. 3d 626, 642 (S.D.N.Y. 2019). Rather, "once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>." <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012). Accordingly, "this Court cannot say that no reasonable factfinder could have reached the ALJ's conclusions about [the plaintiff's] RFC . . . . Thus, this Court must affirm the findings." <u>Herrera v. Comm'r of Soc. Sec.</u>, No. 20 Civ. 7910 (KHP), 2021 WL 4909955, at *11 (S.D.N.Y. Oct. 21, 2021) (citing <u>Brault</u>,

683 F.3d at 448; Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991)).  The Court therefore finds that ALJ Banks properly weighed the opinion evidence in accordance with the Treating Physician Rule.

### 2.  Evaluation of Mr. Martinez's Subjective Allegations

Mr. Martinez argues that the reasons the ALJ gave for not crediting his testimony about the intensity, persistence, and limiting effects of his symptoms—that there were "significant inconsistencies" between Mr. Martinez's subjective allegations and the medical evidence (R. 387)—were "not substantial evidence that he could do full-time work on a sustained basis." (ECF No. 28 at 30).  In his words, "[t]hat Mr. Martinez could turn on a microwave oven, make a sandwich, and drive his father to the doctor in an emergency is not substantial evidence that he could do full-time work on a sustained basis."  (Id.; see id. at 30 ("As far as trips to the Emergency Room or extended psychiatric hospitalization, neither of these are prerequisites for a finding of disability.").  The Commissioner argues that Mr. Martinez "is oversimplifying the ALJ's decision[,]" and that "[t]he ALJ did not conclude that [Mr. Martinez] could work on a full-time basis simply because he was able to prepare sandwiches, nor did she deny [his] disability claim on the sole basis that he did not require in-patient hospitalization."  (ECF No. 30 at 26).  "Rather," the Commissioner argues, "the ALJ considered [Mr. Martinez]'s wide range of activities and overall conservative treatment regimen, among many other factors, in concluding that his claims of disabling limitations were not fully supported."  (Id. at 26–27).

The ALJ noted Mr. Martinez's testimony that he suffered from panic attacks and anxiety disorder, which "necessitated the use of psychotropic medications, frequent and regular visits with a psychiatrist and therapist, and also visits to the emergency department."  (R. 388). Specifically, she noted, inter alia, his statements that he tended to stay home as he felt too

nervous or anxious to go outside, spent most of his day in bed, sometimes heard voices, never

learned how to cook because he was afraid of fire, did not do household chores as his heart began

to race very fast and he felt dizzy, traveled by foot or had his brother drove him places, felt more

comfortable going out with someone as he feared fainting, did not shop, spent his time watching

television for a couple of hours per day, occasionally spent time with others, estimated he could

walk two blocks before needing to stop and rest for five minutes, found it difficult to pay

attention or finish what he started, and had trouble remembering things.  (R. 386–87).  The ALJ

contrasted this testimony with Mr. Martinez's other statements that he drives in emergency

situations and takes his father to appointments about once per week, can microwave meals and

make sandwiches, assisted his father in coaching his son's baseball team.  (R. 387–88).  The ALJ

also noted that "examining sources found that the claimant was well groomed when he

presented for evaluations[.]"  (R. 388 (citing R. 193–95, 334, 364)).  Moreover, ALJ Banks noted

that the "record evidence did not reveal evidence frequent trips to the emergency department

due to the allegedly disabling psychiatric symptoms" or "frequent and extended psychiatric

hospitalizations[,]" and, to the contrary, Mr. Martinez had "acknowledged improvement in his

symptoms with the use of psychotropic medications" and  "ha[d] been noted to have been

'mentally and physically stable at this time'" at recent therapy sessions.  (R. 388 (citing R. 1025–

1108, 2246, 2321)).  As the Commissioner notes, ALJ Banks' RFC determination includes several

non-exertional limitations to reflect Mr. Martinez's mental impairments, including that he is

limited to simple, routine, and repetitive tasks, a low stress job defined as occasional decision-

making, occasional judgment required, occasional changes in the work setting, work that is goal

oriented, no production pace rate work, and occasional contact with co-workers, supervisors,

and the public.  (R. 385–86).  Thus, the Court finds that the ALJ appropriately considered Mr. Martinez's subjective allegations as part of the RFC analysis, and substantial evidence supports the ALJ's conclusions.  See David S. v. Comm'r of Soc. Sec., No. 20 Civ. 1392 (DJS), 2022 WL 2869602, at *8 (N.D.N.Y. July 21, 2022) (finding that ALJ's evaluation of claimant's testimony was supported by substantial evidence).

Mr. Martinez's arguments contesting the ALJ's evaluation of the credibility of his subjective complaints of pain are, essentially, challenges to the ALJ's factual findings and weighing of the record evidence.  "However, in determining whether the ALJ's factual findings are supported by substantial evidence, the reviewing court may not reweigh the evidence or substitute its own opinion for that of the ALJ."  Gilliam v. Comm'r of Soc. Sec., No. 17 Civ. 3764 (ER) (BCM), 2018 WL 9837921, at *10 (S.D.N.Y. Sept. 5, 2018), adopted sub nom. Gilliam v. Berryhill, 2019 WL 5188946 (S.D.N.Y. Oct. 15, 2019).  Indeed, "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record."  Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998); see Veino, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  Having determined that the ALJ properly considered Mr. Martinez's subjective complaints against other contrasting evidence, and considering the "very deferential standard of review" applicable to this case, the Court declines to disturb the ALJ's factual determinations.  Brault, 683 F.3d 443, 448 (2d Cir. 2012).

### 3.  Impact of Non-Severe Impairments and Medication Side Effects

Mr. Martinez argues that the ALJ failed to account for Mr. Martinez's headaches and insomnia, which she found to be non-severe impairments, or the side effects of Mr. Martinez's medications, which he claimed made him drowsy and nauseous, when formulating her RFC

determination.  (See ECF No. 28 at 31–32).  The Commissioner responds that "the ALJ explicitly noted [Mr. Martinez]'s testimony that he had headaches and insomnia, but reasonably concluded that neither impairment prevented him from working" (ECF No. 30 at 28 (citing R. 383, 387)), and that "Dr. Kazi's treatment notes indicate that [Mr. Martinez] consistently denied side effects from his medications."  (Id. at 25 n.7 (citing R. 1048, 1053, 1058, 1065, 1074, 1080, 1086, 1090, 1096, 1289, 1335, 1357)).

The Commissioner's regulations provide that it "will consider all of [a claimant's] medically determinable impairments of which [the Commissioner is] aware, including [the claimant's] medically determinable impairments that are not 'severe,' . . . when . . . assess[ing] . . . [RFC]."  20 C.F.R. § 404.1545(a)(2).  "Thus, an ALJ's RFC determination 'must account for limitations imposed by both severe and nonsevere impairments.'"  Douglas v. Saul, No. 20 Civ. 0322 (PED), 2021 WL 2852962, at *9 (S.D.N.Y. July 8, 2021) (quoting Graham v. Berryhill, No. 16 Civ. 6787, 2017 WL 5019274 (FPG), at *3 (W.D.N.Y. Nov. 3, 2017)).  "Nonetheless, [an] ALJ's error is harmless if substantial evidence establishes that [the] plaintiff's [non-severe impairments] were inconsequential to the ALJ's RFC determination."  Id. (citing Trombley v. Colvin, No. 15 Civ. 0567, 2016 WL 5394723, at *17–18 (N.D.N.Y. Sept. 27, 2016)).

Similarly, "[i]n determining a claimant's entitlement to disability, an ALJ must consider medications taken, including their dosage and side effects."  Louis v. Berryhill, No. 17 Civ. 5975 (PGG) (RWL), 2018 WL 8545833, at *16 (S.D.N.Y. Oct. 11, 2018) (citing SSR 16-3p, 2017 WL 5180304, at *7–8 (S.S.A. Oct. 25, 2017) (explaining that an ALJ is required to consider "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken

to alleviate pain or other symptoms")).  "An ALJ's failure to consider a claimant's subjective reports of her symptoms, including the side effects she experiences as a result of her medications, is grounds for remand."  <u>Plaza v. Comm'r of Soc. Sec.</u>, No. 19 Civ. 3853 (DF), 2020 WL 6135716, at *23 (S.D.N.Y. Oct. 16, 2020) (finding that ALJ erred in formulating RFC by failing to consider reported side effects of medication including drowsiness and lack of concentration).  An ALJ's failure to consider a claimant's complaints regarding their medication side effects is harmless error, however, where the complaints are "unsupported by the objective medical record."  <u>Vargas v. Berryhill</u>, No. 17 Civ. 1623 (PAE) (HBP), 2018 WL 5619962, at *30 (S.D.N.Y. Aug. 10, 2018), <u>adopted by</u>, 2018 WL 5619952 (S.D.N.Y. Aug. 29, 2018); <u>see also</u> <u>Martes v. Comm'r of Soc. Sec.</u>, 344 F. Supp. 3d 750, 767 (S.D.N.Y. 2018) ("An ALJ need not, however, explicitly address each and every statement made in the record that might implicate her evaluation of a claimant's credibility as long as 'the evidence of record permits us to glean the rationale of an ALJ's decision.'") (quoting <u>Cichocki v. Astrue</u>, 534 F. App'x 71, 76 (2d Cir. 2013)).

The Court agrees with the Commissioner that the ALJ properly considered the impact of Mr. Martinez's headaches and insomnia when making her RFC determination.  , ALJ Banks found that his headaches and insomnia constituted non-severe impairments and noted Mr. Martinez's own testimony that these impairments did not prevent him from working.  (R. 383; <u>see</u> ECF No. 23 at 9–10; <u>see</u> R. 384 (ALJ noting that she "considered all of [Mr. Martinez]'s medically determinable impairments, including those that are not severe, when assessing" his RFC)). "Because substantial evidence supports the ALJ's decision to omit limitations relating to [Mr. Martinez]'s non-exertional impairments from his RFC, there is no basis on which to remand for

further consideration of [his] non-exertional impairments in the RFC analysis." Martes, 344 F. Supp. 3d at 769.

Similarly, the Court finds that the ALJ's consideration of any medication side effects is not a basis for remand.  ALJ Banks explicitly noted Mr. Martinez's medications and his testimony that testimony they "cause[d] him to experience side effects."  (R. 387; see R. 386, 388, 404).  Mr. Martinez is correct that the ALJ did not expressly state how Mr. Martinez's complaints regarding these side effects factored into her RFC determination.  As discussed above, however, the Court finds that the ALJ properly analyzed Mr. Martinez's subjective allegations in the contect of the full Record.  (See § III.B.2, supra).  Moreover, as the Commissioner points out, "Dr. Kazi's treatment notes indicate that [Mr. Martinez] consistently denied side effects from his medications."  (ECF No. 30 at 25 n.7 (citing R. 1048, 1053, 1058, 1065, 1074, 1080, 1086, 1090, 1096, 1289, 1335, 1357)).  Accordingly, the Court "find[s] no error in the ALJ's decision not to incorporate the side effects into a discussion of [Mr. Martinez]'s RFC or into the resulting RFC itself." Martes, 344 F. Supp. 3d at 768.

### 4.  Consideration of Time Off-Task and Absenteeism

Mr. Martinez argues that, given the VEs' testimony regarding the preclusion of all work for certain time off-task and absenteeism limitations, ALJ Banks "necessarily found that Mr. Martinez would be off task no more than 10[–]20% of the time or absent no more than once a month[,]" but "failed to provide any explanation for this finding."  (ECF No. 28 at 33).  The Commissioner responds that the ALJ reasonably afforded little weight to Dr. Kazi's Opinion that Mr. Martinez would be absent more than three days per month, and that Dr. Sebold opined that Mr. Martinez had no limitation in maintaining a regular schedule or regular attendance.

(ECF No. 30 at 27).   The Commissioner also argues that the ALJ properly rejected Dr. Blitz's Opinion that Mr. Martinez would require breaks of 20 to 30 minutes approximately once per week as inconsistent with the Record, which reflected that Mr. Martinez could maintain sufficient concentration to perform simple work.  (Id. (citing R. 405–06, 1675–77)).

For largely the same reasons set forth above (see §§ III.B.1–2), the Court finds that ALJ Banks properly considered time off-task and absenteeism in her RFC determination.  As discussed above, the ALJ considered the conflicting evidence in the Record regarding Mr. Martinez's ability to stay on task and whether he had any limitations in regular attendance at work.  Although Mr. Martinez points to evidence to support a greater restriction than ALJ Banks found, other Record evidence supports the ALJ's determination, including Dr. Sebold's 2019 Opinion that Mr. Martinez had no limitation in maintaining a regular schedule or regular attendance. (R. 1372).  As previously discussed, "[w]here, as here, substantial evidence supports the ALJ's RFC determination, the Court may not re-weigh the evidence."   Pichardo v. Comm'r of Soc. Sec., No. 21 Civ. 6873 (SDA), 2023 WL 2596970, at *19 (S.D.N.Y. Mar. 22, 2023) (rejecting plaintiff's argument that ALJ failed to consider time off-task or absenteeism where the ALJ's RFC determination was supported by substantial evidence); see Andrea G. v. Comm'r of Soc. Sec., No. 20 Civ. 01253 (TWD), 2022 WL 204400, at *5 (N.D.N.Y. Jan. 24, 2022) (finding no error in the ALJ's rejection of a time off task limitation where the consultative psychologist found that the plaintiff "was cooperative with coherent and goal-directed thought processes," her "attention and concentration were intact").

IV.   **CONCLUSION**

For the reasons set forth above, Mr. Martinez's Motion is DENIED and the Commissioner's

Motion is GRANTED.

The Clerk of Court is respectfully directed to close ECF Nos. 27 and 29, and to close this

case.

Dated:       New York, New York
             March 30, 2023

                              SO ORDERED.

                              **SARAH L. CAVE**
                              **United States Magistrate Judge**